COURT OF 
APPEALS
SECOND 
DISTRICT OF TEXAS
FORT 
WORTH
 
NO. 2-03-165-CV

 
PHILADELPHIA 
AMERICAN                                                     APPELLANT
LIFE 
INSURANCE COMPANY
 
V.
 
BILLY 
“REX” TURNER                                                                APPELLEE
 
------------
 
FROM 
THE 43RD DISTRICT COURT OF PARKER COUNTY
 
------------
 
OPINION
 
------------
        In 
this interlocutory appeal, Appellant Philadelphia American Life Insurance 
Company (PALIC) appeals the trial court's class certification order entered in 
favor of Appellee Billy “Rex” Turner. We reverse and remand.
I. Factual and 
Procedural Background
        Appellant 
is a company that sells group health insurance in at least eighteen states 
throughout the United States. Two of its group policies are at issue in this 
case. The first is a major medical expense certificate of insurance policy, form 
H-0055P (“55P”). The second is a hospital medical-surgical expense 
certificate policy, form H-0070P (“70P”). Appellant sold both policies in 
Alabama, Arkansas, Arizona, Georgia, Illinois, Indiana, Missouri, Mississippi, 
Nevada, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, 
Texas, Virginia, and West Virginia.
        Appellee 
purchased the major medical insurance policy form 55P from Appellant in May 1999 
through the Small Business Association of America and has been continuously 
covered under the policy through at least the day of his testimony at the class 
certification hearing on November 6, 2002. Appellant charged Appellee on a 
monthly basis, for a premium as well as an administrative fee.[1]
        On 
the first page of Appellee’s application for coverage under the 55P policy, 
there is a section that lists the types of fees with blanks left for the actual 
amount, if any, for the fees. The fee section on Appellee’s application lists 
the following fee descriptions and amounts:
 

 


Appellee 
signed the application and executed an authorization allowing Appellant to 
electronically withdraw a premium in the amount of $173.16 directly from his 
bank account on a monthly basis.[2]
        Appellee 
received a certificate of coverage (Certificate) from Appellant, which states:
 
Entire 
Contract; Changes: The entire contract will consist of: 1. the Group Policy, the 
application of the Group Policyholder, which will be attached to the Group 
Policy; and 2. any enrollment applications of the proposed Insured individuals, 
including Your own.

 
The 
Certificate included a schedule of benefits, which provided that Appellant’s 
coverage encompassed a $500,000 maximum benefit for each injury or sickness and 
a $5,000,000 lifetime maximum benefit. In addition to the various coverage 
limits and copay requirements, the schedule lists the “initial premium” as 
$173.16 and indicates that it will be paid by a monthly bank draft.
        The 
Certificate contains a non renewal provision, which states:
 
We 
can only terminate the Policy upon 90 days written notice if We offer the 
Policyholder coverage, on a guaranteed issue basis, under any policy which We 
are currently marketing or upon 180 days notice if We terminate all of Our 
policies in the state of delivery.

 
The 
Certificate states that if coverage terminates, the policyholder is entitled to 
conversion or continuation under the group policy as long as he was continuously 
insured under the group policy for at least three consecutive months prior to 
termination and the Certificate was not terminated involuntarily for cause, such 
as fraud or failure to pay the required premium. The Certificate offers two 
conversion options and one continuation option:
 
Option 
1: A conversion policy providing similar coverage and benefits as provided under 
the Group Policy.
 
Option 
2: A conversion policy with less[e]r coverage and benefits.
 
Option 
3: Continuation of coverage under the Group Policy.
 
        On 
December 31, 2001, Appellant sent all Texas 55P policyholders, including 
Appellee, a notice terminating the group policy, effective on the first monthly 
premium renewal date after April 5, 2002. The letter offered Texas 55P 
policyholders a certificate under the “only” available plan in Texas at the 
time. The plan provided limited benefit coverage with a $10,000 calendar year 
maximum benefit and a $50,000 lifetime maximum benefit. For more comprehensive 
coverage, the letter encouraged Texas 55P policyholders to contact an agent for 
assistance through another carrier.
        Appellee 
filed suit on March 5, 2002, along with a request for class certification, 
alleging that Appellant breached the insurance contract by charging him, and 
other 55P and 70P policyholders, a monthly administrative fee not authorized by 
the insurance contract.[3]  Although Appellee 
testified that he paid $173.16 a month and $173.16 was the amount of his 
premium, he argues that the $7.50 monthly administrative fee included in his 
payment was not authorized by the contract because he agreed to pay only a 
monthly premium, and not administrative fees. Appellee, seeking injunctive 
relief, additionally asserted that the non renewal of the 55P policy was not in 
compliance with his interpretation of the policy. Appellee claimed that 
Appellant’s attempt to cancel the Certificate constituted a breach of the 
terms of the insurance contract for two reasons. First, Appellee asserted that 
Appellant was required to provide a 180-day notice of cancellation because a 
90-day notice was allowed under the contract only if Appellant offered 
alternative coverage under any policy that it currently marketed in Texas. 
Second, Appellee claimed that instead of offering a conversion policy with 
similar coverage and benefits as required by the contract, Appellant offered a 
“substantially inferior product” as the only replacement option.
        On 
March 11, six days after Appellee filed suit, Appellant sent another letter to 
all Texas 55P policyholders offering an additional plan that covered eligible 
medical expenses after either a $5,000 or $10,000 calendar year deductible up to 
a lifetime maximum benefit of $1 million. With respect to Appellee’s request 
for injunctive relief, the parties reached an agreement, and the trial court 
entered an “Agreed Order for Injunction” on April 5, 2002, enjoining 
Appellant from cancelling all Texas 55P certificates for a period of six months. 
Appellant then filed an application to withdraw from writing association 
coverage insurance with the Texas Department of Insurance (TDI) along with a 
withdrawal plan on May 24, 2002. Appellant’s withdrawal plan was approved by 
the TDI on June 27, 2002.
        On 
July 1, 2002, Appellant sent another letter to the Texas 55P policyholders 
announcing that it was exiting the association group accident and health 
insurance market and therefore terminating coverage under 55P policies, 
effective January 1, 2003. The letter offered three conversion policies: a 
standard conversion policy, a basic conversion policy, and a $5,000 deductible 
conversion policy.
        On 
October 24 and 25, 2002, the trial court held a hearing on Appellee’s request 
for a second injunction as well Appellant’s plea to the jurisdiction, motion 
to dismiss, and motion for summary judgment. The trial court ruled that the TDI 
has jurisdiction over Appellant’s withdrawal plan and denied Appellee’s 
request for a second injunction as well as Appellant’s motion to dismiss and 
motion for summary judgment.
        After 
a one-day class certification hearing on November 6, 2002, the trial court 
certified two separate classes. The trial court’s order certifying the class 
action included findings of fact, conclusions of law, and a trial plan. The 
first class identified in the order, the Administrative Fee Class, is a 
multi-state class limited to Appellee’s breach of contract claim for 
Appellant’s alleged improper inclusion of an administrative fee as part of the 
monthly premiums paid on the 55P and 70P policies.[4]  
The second class, the First Improper Cancellation Class (Cancellation Class), is 
a class of Texas 55P policyholders seeking only attorneys’ fees for the agreed 
temporary injunction. The sole common question of fact identified by the court 
for the Cancellation Class is a determination of what constitutes a reasonable 
and necessary attorney fee. Appellant brought this interlocutory appeal seeking 
to reverse the certification order for both classes.
II. Standard of Review
A 
class certification decision under Texas Rule of Civil Procedure 42 is reviewed 
for abuse of discretion. Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 
691 (Tex. 2002). A trial court abuses its discretion when it: (1) does not 
properly apply the law to the undisputed facts; (2) acts arbitrarily or 
unreasonably; or (3) rules upon factual assertions not supported by the record. Stobaugh 
v. Norwegian Cruise Line Ltd., 105 S.W.3d 302, 305 (Tex. App.—Houston 
[14th Dist.] 2003, no pet.); see also Wiggins v. Enserch Exploration, Inc., 
743 S.W.2d 332, 334 (Tex. App.—Dallas 1987, writ dism'd w.o.j.). Merely 
because a trial court may decide a matter within its discretion in a different 
manner than an appellate court would in a similar circumstance does not 
demonstrate that an abuse of discretion has occurred. Downer v. Aquamarine 
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 
476 U.S. 1159 (1986). While the trial court’s ruling on class certification is 
subject to an abuse of discretion analysis, there is no right to proceed as a 
class action. Southwestern Ref. Co. v. Bernal, 22 S.W.3d 425, 439 (Tex. 
2000). Instead, the plaintiff must satisfy all requirements for class 
certification as set forth in Texas Rule of Civil Procedure 42. Tex. R. Civ. P. 42.
        Under 
Rule 42, all class actions must satisfy four threshold elements: (1) numerosity—the 
number of plaintiffs is “so numerous that joinder of all members is 
impracticable”; (2) commonality—“there are questions of law, or fact 
common to the class”; (3) typicality—“the claims or defenses of the 
representative parties are typical of the claims or defenses of the class”; 
and (4) adequacy of representation—the proposed representatives “will fairly 
and adequately protect the interests of the class.” Tex. R. Civ. P. 42(a); Union Pac. 
Res. Group, Inc. v. Hankins, 111 S.W.3d 69, 73 (Tex. 2003).
        In 
addition to the four threshold requirements, class actions must satisfy at least 
one of four subdivisions of Rule 42(b). Tex. 
R. Civ. P. 42(b). Here, the trial court certified the Administrative Fee 
Class under 42(b)(4), which “is one of the most stringent prerequisites to 
class certification.” Tex. R. Civ. P. 42(b)(4); 
Bernal, 22 S.W.3d at 433. Rule 42(b)(4) mandates that the court must 
find:
 
that 
the questions of law or fact common to the members of the class predominate over 
any questions affecting only individual members, and that a class action is 
superior to other available methods for the fair and efficient adjudication of 
the controversy.

Tex. R. Civ. P. 42(b)(4). To aid courts 
in analyzing whether certification under 42(b)(4) is appropriate, the rule 
provides the following list of non exhaustive factors to consider:
 
(A) 
the interest of members of the class in individually controlling the prosecution 
or defense of separate actions; (B) the extent and nature of any litigation 
concerning the controversy already commenced by or against members of the class; 
(C) the desirability or undesirability of concentrating the litigation of the 
claims in the particular forum; (D) the difficulties likely to be encountered in 
the management of a class action.

 
Id.; 
Bernal, 22 S.W.3d at 433-34.
        The 
trial court certified the Cancellation Class under both 42(b)(2) and 42(b)(4). 
Rule 42(b)(2) requires proof that Appellant has acted on grounds generally 
applicable to the class in a manner that makes final injunctive or declaratory 
relief appropriate with respect to the class as a whole. Tex. R. Civ. P. 42(b)(2). Furthermore, 
in a Rule 42(b)(2) class action, the injunctive or declaratory relief sought 
must predominate over the monetary relief sought. See TCI Cablevision, Inc. 
v. Owens, 8 S.W.3d 837, 847 (Tex. App.—Beaumont 2000, pet. dism'd by agr.).
        In 
a class action, the trial court must perform a rigorous analysis to determine 
whether all prerequisites to class certification are met. Bernal, 22 
S.W.3d at 435. The Texas Supreme Court has mandated a cautious approach to class 
certification and has expressly rejected the “certify now and worry later” 
approach. Id. In determining the validity of class certification, it is 
therefore essential that the trial court has an understanding of the “claims, 
defenses, relevant facts, and applicable substantive law.” Id. (quoting 
Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)). Further, 
we cannot rely on “mere assurances of counsel” to conclude that the 
predominance and superiority requirements are, or can be, met. Id. 
Although we are limited to determining whether the trial court abused its 
discretion in ordering class certification, the trial court’s exercise of 
discretion cannot be supported by every presumption that can be made in its 
favor. Schein, 102 S.W.3d at 691. Certification is only appropriate where 
the trial court can make an initial determination that the individual issues can 
be considered in a “manageable, time-efficient, yet fair manner.” Bernal, 
22 S.W.3d at 436. An appellate court, in reviewing a trial court's decision, 
should not err in favor of certification. See id. at 434-35; Enron 
Oil & Gas Co. v. Joffrion, 116 S.W.3d 215, 219 (Tex. App.—Tyler 2003, 
no pet.).
        Nonetheless, 
a trial court is afforded considerable authority and discretion in defining the 
class, determining whether to grant or deny class certification, and in 
decertifying or modifying the class if necessary as the case develops. Intratex 
Gas Co. v. Beeson, 22 S.W.3d 398, 406 (Tex. 2000). When a class has been 
improperly certified, appellate courts have discretion to remand rather than 
render judgment. See Schein, 102 S.W.3d at 700 (remanding case and 
stating whether a class can be certified in light of its opinion is a matter 
that must be decided by the trial court in the first instance); Intratex, 
22 S.W.3d at 406 (stating appellate courts should be reluctant to redefine a 
fundamentally flawed class definition because the parameters of the new 
definition may not be evident from the record, and unlike trial courts, 
appellate courts do not have access to any additional relevant evidence that may 
facilitate evaluating the definition); Hardy v. Wise, 92 S.W.3d 650, 654 
(Tex. App.—Beaumont 2002, no pet.) (remanding case without deciding merits of 
judgment after appellate court concluded trial court improperly certified class 
and because trial court denied absent class members due process).
III. 
Discussion
A. 
Administrative Fee Class
        Appellee’s 
claim under the Administrative Fee Class is that Appellant improperly charged a 
monthly administrative fee that was not authorized or agreed to under the 
insurance policy. Appellee, however, admits that he agreed to pay a monthly 
premium in the amount of $173.16. Thus, Appellee does not claim that he did not 
agree to pay $173.16 a month. Rather, Appellee argues that the administrative 
fee is not a premium, i.e., he did not agree that $7.50 of his monthly premium 
would be attributed to administrative costs.
        Appellant 
contends that the trial court failed to adequately establish the class 
certification requirements for the Administrative Fee Class, including 
typicality and adequacy of representation under Rule 42(a) and predominance and 
superiority under Rule 42(b)(4). The Texas Supreme Court has noted that “such 
issues as commonality, typicality, superiority, and predominance are at least 
tangentially related to the merits; i.e., one cannot know whether a 
representative's claim is 'typical' of those of the class without knowing 
something about the merits.” Hankins, 111 S.W.3d at 72. Trial courts 
must be able to look beyond the pleadings to make a reasoned inquiry of the 
certification issues because class determinations involve considerations 
enmeshed in the legal and factual issues that comprise the plaintiffs' claims. Union 
Pac. Res. Group, Inc. v. Neinast, 67 S.W.3d 275, 283-84 (Tex. App.—Houston 
[1st Dist.] 2001, no pet.). We accordingly begin with an examination of the 
trial court’s analysis of Appellee’s claims.
        The 
trial court’s trial plan anticipates a two-step process in determining whether 
Appellant breached its contract with the 55P and 70P policyholders. The first 
step is described as follows:
 
PALIC 
contends that the identical language in the uniform application of every class 
member, that was attached to and therefore became a part of every class 
member’s contract, that refers to an “administrative fee[,]” coupled with 
the other language in the policy, creates a contractual right in favor of PALIC 
to charge the monthly administrative fee in question. Plaintiff contends that 
the policy does not contain any agreement whereby the policyholder agrees to pay 
a monthly administrative fee. Both parties contend that the policy is 
unambiguous on this issue. “When a court concludes that contract language can 
be given a certain or definite meaning, then the language is not ambiguous, and 
the court is obligate[d] to interpret the contract as a matter of law.” 
Therefore, the court will decide by competiting [sic] summary judgment motions 
whose interpretation on the insurance contract is correct. (citations omitted).

 
        According 
to the trial plan, if the trial court finds that Appellant’s interpretation is 
correct, judgment will be rendered that the Administrative Fee Class take 
nothing. However, if the trial court finds that Appellee’s interpretation is 
correct, the trial plan states that there is a second step needed to determine 
whether Appellant breached its contract with Appellee:
 
[T]he 
court will next have to consider PALIC’s argument that the policy allows it to 
charge a “premium[,]” and that the administrative fee is simply a 
“premium[.]”
Plaintiff 
does not contest the fact that the policy allows PALIC to charge a premium. 
Instead, Plaintiff argues that the administrative fee is not a premium. 
Plaintiff has presented testimony from PALIC’s employees which Plaintiff 
believes supports this claim. This thus presents a factual dispute that will 
have to be resolved by a jury. The focus of a trial on this issue will be 
whether the administrative fee is a premium or something in addition to a 
premium.

 
        The 
trial court explicitly recognizes in its description of the first step that when 
a contract is unambiguous, the trial court must interpret the contract as a 
matter of law. Since the trial court indicates that it will in fact interpret 
the contract as a matter of law without mentioning an analysis of the 
contract’s ambiguity and without an explicit finding regarding ambiguity, the 
trial court apparently presumes that the contract is unambiguous based on the 
fact that neither party asserts ambiguity. As discussed in further detail below, 
a determination regarding the contract’s ambiguity significantly impacts the 
class certification analysis for this particular case because it affects the 
admissibility of parol evidence, whether Appellee’s claim can be managed 
efficiently, and even whether Appellee has a claim at all.
        In 
construing a written contract, the primary concern of the court is to ascertain 
the true intentions of the parties as expressed in the instrument. Coker v. 
Coker, 650 S.W.2d 391, 393 (Tex. 1983). If the instrument is worded so that 
it can be given a certain or definite legal meaning or interpretation, then it 
is not ambiguous and the court will construe the contract as a matter of law. Id.; 
Jabri v. Qaddura, 108 S.W.3d 404, 411 (Tex. App.—Fort Worth 2003, no 
pet.). A contract, however, is ambiguous when its meaning is uncertain and 
doubtful or it is reasonably susceptible to more than one meaning. Coker, 
650 S.W.2d at 393-94. Whether a contract is ambiguous is a question of law for 
the court to decide by looking at the contract as a whole in light of the 
circumstances present when the contract was entered. Id. at 394. Even if 
neither party asserts that the policy is ambiguous, the court may determine that 
the policy is ambiguous, and consider parol evidence of the parties’ 
intentions. See Nat’l Union Fire Ins. Co. v. CBI Indus., Inc., 
907 S.W.2d 517, 520 (Tex. 1995); Sage St. Assocs. v. Northdale Constr. Co., 
863 S.W.2d 438, 445 (Tex. 1993) (holding that even if neither party pleads 
ambiguity, a trial judge may conclude a contract is ambiguous); Coker, 
650 S.W.2d at 393 (concluding agreement was ambiguous even though parties 
affirmatively asserted it was unambiguous, and trial court and court of appeals 
agreed it was unambiguous). Thus, the trial court was not bound by the 
parties’ assertions that the contract was unambiguous and was free to 
determine on its own accord whether the contract is in fact ambiguous or not.
        We 
further note that the trial court’s two-step analysis is unnecessary. The 
issue in this case should be whether Appellant breached its contract with the 
55P and 70P policyholders by charging a premium that includes a sum considered 
internally as an administrative fee. If the contract is unambiguous and there is 
a certain or definite legal meaning for the term “premium,” the trial court 
should construe the contract as a matter of law. If, on the other hand, the 
contract is ambiguous, the issue becomes a fact question for the jury and the 
trial court should allow the parties to present parol evidence of their 
intentions.
        The 
trial court notes in its description of the second step of the trial plan’s 
analysis that it will allow Appellee to present testimony from Appellant’s 
employees to support his claim that an administrative fee is not a premium. 
Recognizing that parol evidence is admitted only upon a finding that the term is 
ambiguous, it would appear that the trial court deems the term “premium” as 
found in the contract ambiguous. However, in order for the trial court to 
properly analyze whether the policy was ambiguous, it needed to first determine 
whether there is a definite legal meaning or interpretation for the word 
“premium.” See Coker, 650 S.W.2d at 393. The policy contains three 
paragraphs in reference to premiums addressing the payment of premiums, the 
grace period, and premium changes—none of which define the term “premium.” 
Regarding the payment of premiums, the policy simply recites that:
 
The 
premium is payable monthly, quarterly, semi-annually or annually. Payment of any 
premium will not maintain the coverage in force beyond the next premium due 
date, except as provided by the grace period. Any indebtedness of the Insured 
person to Us arising out of prior claims may be deducted in any settlement under 
the Group Policy.

 
        Likewise, 
the meaning of “premium” was not developed in the trial court, and a review 
of the record reflects little evidence in reference to this critical issue. The 
trial court’s trial plan indicates that this issue would be incorrectly left 
to the fact finder without first determining whether there is a certain or 
definite legal meaning of the term “premium” in Texas or any of the other 
states involved, as evidenced by its anticipated jury issues:
 
Question: 
Did the Defendant fail to comply with the insurance agreement by charging the 
Plaintiff class a monthly administrative fee?
 
In 
deciding whether the Defendant failed to comply with the insurance agreement you 
must decide if the administrative fee is a premium.

 
Consequently, 
we question whether the class certification requirements of Rule 42 were met 
despite the lack of evidence regarding the definition of “premium” and the 
absence of any meaningful analysis of the contract’s ambiguity. We conclude 
the answer to this question is no.
Typicality
        To 
satisfy the typicality requirement of Rule 42(a), Appellee must prove that he 
possesses the same interest and suffered the same injury as the other members of 
the class, that his claims are based on the same legal theory as the other class 
members’ claims, and that Appellant does not have certain potential defenses 
peculiar to him. See Tex. R. Civ. 
P. 42(a); Spera v. Fleming, Hovenkamp & Grayson, P.C., 4 
S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Appellant 
asserts that Appellee’s claim is atypical of the class members defined in the 
trial court’s trial plan because his claim is based on subjective factors 
particular to his own agreement with Appellant—whether he believed that the 
administrative fee applied only to the first month or every month. Because 
Appellee offered no evidence of the other class members’ knowledge regarding 
the administrative fee, Appellant asserts that Appellee cannot show that other 
policyholders shared his view and, as a result, cannot demonstrate that his 
claims are typical of the class.
        Appellee 
maintains that Appellant is incorrect in asserting that Appellee’s theory of 
liability depends on subjective knowledge regarding the administrative fee. He 
asserts that under the parol evidence rule, where there is no evidence of fraud 
and the agreement is complete and unambiguous, extrinsic evidence is not 
admissible to vary, add to, or contradict the express terms of the agreement. See 
King v. Fordice, 776 S.W.2d 608, 610 (Tex. App.—Dallas 1989, writ denied). 
While this is true, Appellee’s argument only has merit if the policy is 
unambiguous. See id.
        If 
the contract is ambiguous, we are faced with a record reflecting that Appellee 
did not introduce evidence, and the trial court made no finding, that the class 
uniformly believed that the administrative fee only applied to the first month 
or that the fee was uniformly misrepresented by Appellant’s agents either at 
the time of the application or at the time the insureds received the schedule of 
benefits stating the total amount of premium. In that event, the typicality 
requirement of Rule 42(a) was not established. On the other hand, if the 
contract is worded so that it can be given a certain or definite legal meaning, 
and is therefore unambiguous, the trial court should construe the contract as a 
matter of law. Jabri, 108 S.W.3d at 411. As we previously noted, the 
record is noticeably void of any meaningful interpretation of the term 
“premium” and consequently, an analysis of the contract’s ambiguity.
        Regardless 
of whether the contract is ambiguous, Appellee failed to establish that his 
contract is typical of all the 55P and 70P policies issued by Appellant during 
the period beginning four years prior to the filing of this suit. Although 
Appellee asserted at trial and on appeal that the contracts for every 
policyholder in the class have “uniform insurance policy form and language 
relating to the monthly administrative fee,” the evidence indicates otherwise. 
Appellee’s counsel called Tommy Chilcutt, an insurance broker and National 
Marketing Director for American Health Underwriters (AHU), to testify as an 
expert witness. Since AHU is the company that sold Appellant’s 55P policy to 
Appellee and other policyholders, Chilcutt is familiar with Appellant’s policy 
forms. Appellee’s counsel questioned Chilcutt regarding the similarity of 
Appellee’s Texas 55P policy to the 55P and 70P policies offered in other 
states as follows:
 
[MR. 
VITULLO, APPELLEE’S COUNSEL]: Let's start with the application. These are the 
applications, Exhibit No. 42, from all the different states.
 
THE 
COURT: Is that out of the same thing in this book?
 
MR. 
VITULLO: Yes.
 
Q. 
(By Mr. Vitullo) And up here on the first page, it's got that same form for all 
the agents that fill it out. Base premium, plus enrollment fee, plus 
administrative fee, total amount collected; do you see that?
 
A. 
Yes, I do.
 
Q. 
And that's for Arizona, and we've got the 70, we've got the 55, we've got 
Missouri. Here's Missouri. It's identical. Do you see that? Here's Oklahoma, 
identical.
 
A. 
Yes.
 
Q. 
Right?
             
A. 
Yes.
 
Q. 
Here's -- What is this, South Carolina?
 
A. 
It is.

  
 Q. 
 Identical, right?

 
A. 
Yes. This is an area that we had to spend the most time on because of how you're 
identifying down below.
 

 Q. Georgia?
  
 A. Georgia.

 
Q. 
Identical. So with respect to the language in the policy application, the terms, 
the premium, the enrollment fees, plus the administrative fees, and every 
application in every state that you sold these policies, they're identical, 
aren't they?
 
          A. 
Yes.
 

 
 
 
 
 
 
 Appellee’s Form
 
  
 
  
  
  
  
  
  
  
  
  
 
             Other 
 Form
 
 
 

 
        A 
thorough review of the record does not support this testimony nor Appellee’s 
assertions on appeal that “those portions of the policy triggered by the 
‘administrative fee’ class are all identical.” The record before us 
consists of 55P and 70P applications for only ten of the eighteen states 
certified in the Administrative Fee Class. While there is an application in 
evidence that does not specify a state, it is unclear whether that form is used 
in the remaining eight states. Further, and more importantly, the applications 
are not identical. On the 55P applications for South Carolina and Georgia, as 
well as the application for the unspecified state, there is a significant 
difference in the language on the applications. As opposed to the fee section in 
Appellee’s application, which contains a space to write in enrollment fees, 
these applications contain a space to write in the amount of a “one time” 
policy fee.
 
In 
assessing whether Appellee’s claims are typical of the claims of the 
Administrative Fee Class, this difference is crucial. See Gen. Motors Corp. 
v. Bloyed, 916 S.W.2d 949, 959 (Tex. 1996) (class certification is 
inappropriate where there is uncertainty as to whether a class action could be 
properly certified and maintained through trial because there are potentially 
substantial individual questions of fact and law and obstacles to the 
manageability of the action on a class basis); Stobaugh, 105 S.W.3d at 
305 (a trial court abuses its discretion when it rules upon factual assertions 
not supported by evidence material in the record).
        When 
construing the plain meaning of a contract's wording, the court must look at the 
contract as a whole in light of the circumstances present when the contract was 
entered; each part of the contract is considered against all other parts to 
determine its meaning, and there is a presumption that the parties intended 
every part to have some effect. Fox v. Parker, 98 S.W.3d 713, 719 (Tex. 
App.—Waco 2003, pet. denied). The differences between the ten forms in the 
record and the uncertainty as to the form used in the other eight states, 
prevents the trial court from making a “meaningful determination of the 
certification issues.” See Bernal, 22 S.W.3d at 435 (quoting Castano, 
84 F.3d at 744). Where each part of the policy is considered against all other 
parts to determine its meaning, the trial court’s threshold determination of 
ambiguity may be different for the forms where the policy fee is described as a 
“one time” fee. For example, the forms that list the policy fee as a “one 
time” fee, are at the very least, less ambiguous than the forms that do not 
implicitly limit one of the fees to a “one time” occurrence.
        Should 
the trial court determine, upon further analysis, that the contract is 
ambiguous, the trial court may consider parol evidence of the parties’ 
intentions. Nat’l Union, 907 S.W.2d at 520. Appellee’s burden to 
establish that he did not agree to pay the administrative fee on a monthly basis 
is much higher where the contract describes the policy fee as a “one time” 
fee and does not similarly describe the administrative fee as such. If the 
contract is ambiguous and parol evidence is admissible, Appellee faces the 
daunting task of establishing typicality in the face of individual subjective 
factors and the difference in forms. The Texas Supreme Court has emphasized on 
several occasions that the trial court must determine from the outset that the 
issues can be litigated in a manageable, time-efficient, yet fair manner. Schein, 
102 S.W.3d at 685; Bernal, 22 S.W.3d at 435-36; see Bloyed, 916 
S.W.2d at 954.
        Yet, 
if the contract is unambiguous, the trial court must construe the contract as a 
matter of law. Nat'l Union, 907 S.W.2d at 520; Jabri, 108 S.W.3d 
at 411. Again, the difference in forms is significant. Courts interpret 
insurance policies in Texas according to the rules of contract construction. Am. 
Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex. 2003); Tex. 
Farmers Ins. Co. v. Murphy, 996 S.W.2d 873, 879 (Tex. 1999); Kelley-Coppedge, 
Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). When construing 
the policy's language, we must give effect to all contractual provisions so that 
none will be rendered meaningless. Schaefer, 124 S.W.3d at 157. It is 
much easier to determine that the administrative fee is monthly where the policy 
fee is the only fee described as a “one time” fee. Accordingly, we conclude 
that Appellee failed to establish the typicality requirement of class 
certification.
Adequacy of Representation
        Appellant 
argues that Appellee did not establish the adequacy requirement of Rule 42(a) 
because 1) Appellee is unfamiliar with the issues facing the proposed class and 
2) Appellee’s admission that he agreed to pay the monthly premium amount that 
included the administrative fee raises a conflict of interest that undermines 
the adequacy of his representation. The adequacy requirement of Rule 42(a) 
requires that Appellee show an absence of antagonism between himself and the 
potential class members, and an assurance that Appellee will participate 
meaningfully and confidently in the prosecution of the claims, and/or the 
defenses, or both. See Tex. R. Civ. 
P. 42(a); Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 150 
(Tex. App.—Austin 1995, writ dism’d w.o.j.). Adequacy of representation is a 
question of fact addressed to the sound discretion of the trial court, and the 
trial court does not abuse its discretion in finding adequacy if there is 
evidence to support the finding. See Glassell v. Ellis, 956 S.W.2d 
676, 681-82 (Tex. App.—Texarkana 1997, pet. dism'd w.o.j.); Group Hosp. 
Serv., Inc. v. Barrett, 426 S.W.2d 310, 315 (Tex. Civ. App.—Houston [14th 
Dist.] 1968, writ ref'd n.r.e.). Only a conflict that goes to the very subject 
matter of the litigation will defeat a finding of adequacy. Nissan Motor Co. 
v. Fry, 27 S.W.3d 573, 583 (Tex. App.—Corpus Christi 2000, pet. denied) 
(op. on reh’g); Adams v. Reagan, 791 S.W.2d 284, 291 (Tex. App.—Fort 
Worth 1990, no writ).
        The 
evidence indicates that Appellee understands the scope of the potential class, 
the damages being sought, and the fee arrangement with counsel. Although 
Appellee admits that he agreed to pay a monthly premium, he also testified that 
he never agreed to pay an administrative fee on a monthly basis. There is no 
evidence that Appellee is unfamiliar with the issues facing the proposed class, 
of any actual antagonism between Appellee and the Administrative Fee Class, nor 
of a conflict that undermines the adequacy of his representation. We conclude 
that the trial court did not abuse its discretion on the issue of adequacy.
Predominance
        Appellant 
additionally argues that class certification is inappropriate for the 
Administrative Fee Class because common factual and legal issues do not 
predominate over any questions affecting only individual members. See Tex. R. Civ. P. 42(b)(4). The 
predominance requirement of Rule 42(b)(4) “is one of the most stringent 
prerequisites to class certification.” Bernal, 22 S.W.3d at 433. To 
determine whether common issues predominate, a court must identify the 
substantive issues of the case that will control the outcome of the litigation, 
assess which issues will predominate, and determine if the predominating issues 
are, in fact, those common to the class. Id. at 434. As discussed in our 
analysis of the typicality requirement, we are not convinced that the trial 
court conducted a rigorous analysis of Appellee’s breach of contract claim.
        Because 
the ambiguity issue essentially turns on the definition of “premium,” the 
predominance requirement is inadequate without a choice-of-law analysis on 
whether each state permits an insurance company to charge a premium that 
includes a component that is treated internally as an administrative fee. See 
Schein, 102 S.W.3d at 697. The trial court concluded that there are no 
conflict of law issues in defining the term “premium,” noting that it 
analyzed Appellant’s supplemental letter brief citing statutes that define 
“gross premium” but found that the statutes referenced the states’ 
definitions of “gross premium” for the purpose of collecting taxes only. In 
fact, nine of the statutes provided in Appellant’s supplemental letter brief 
defining “premium” explicitly relate to insurance contracts generally, not 
to tax collection.[5]  In all of these states but 
Indiana,[6]  “premium” is defined as “the 
consideration for insurance, by whatever name called”, and most states 
specifically note that fees by any other name are deemed part of the premium. See 
statutes cited in footnote 6. If the trial court has correctly determined 
that “the focus of a trial on this issue will be whether the administrative 
fee is a premium or something in addition to a premium[,]” then the 
policyholders in Alabama, Arizona, Arkansas, Georgia, Indiana, Nevada, Oklahoma, 
South Carolina, and West Virginia, have no claim as a matter of law in their 
home states. See statutes cited in footnote 6. The Due Process Clause 
limits the extent to which one state’s law can be applied to claims that arise 
in many states. U.S. Const. amend. XIV; Tracker Marine, 
L.P. v. Ogle, 108 S.W.3d 349, 355 (Tex. App.—Houston [14th Dist.] 2003, no 
pet.). Appellee had the burden of presenting an analysis of state law evaluating 
any differences between the states enumerated in the class definition and failed 
to satisfy that burden. See id. at 352.
        The 
trial court based its finding that Texas law would apply to the Administrative 
Fee Class entirely on Appellant’s physical location in Texas. But Texas 
“does not apply the law of the state where a defendant is headquartered to 
every claim for economic damages that can be alleged against the defendant.” Schein, 
102 S.W.3d at 698. Rather, Texas uses the Restatement (Second) of Conflict of 
Laws’ most significant relationship test to decide choice-of-law issues. Id. 
at 696. That test requires consideration of the relationship of each transaction 
to each state involved. Id.; Restatement 
(Second) of Conflict of Laws §§ 6, 188 (1971). The Restatement provides 
that the following should be taken into account in determining the law 
applicable to a particular dispute in contract: “(a) the place of contracting; 
(b) the place of negotiation of the contract; (c) the place of performance; (d) 
the location of the subject matter of the contract; and (e) the domicil[e], 
residence, nationality, place of incorporation, and place of business of the 
parties.” Restatement (Second) of 
Conflict of Laws § 188(2). Appellant asserts that aside from 
Appellant’s domicile in Texas, every one of these factors occurred in eighteen 
separate states. Because the trial court determined that the law was the same in 
all eighteen states, we do not have the benefit of an analysis of these factors. 
If the Administrative Fee Class’ breach of contract claim must be adjudicated 
under the law of many jurisdictions, the class is not manageable. Schein, 
102 S.W.3d at 697. Just as the Texas Supreme Court did in Schein, we 
decline to say that Texas law will not govern the Administrative Fee Class’ 
breach of contract claim. See id. We can say, however, that Appellee 
wholly failed to demonstrate that Texas law should apply to so many of those 
claims that common legal issues will predominate. See id. at 698-99.
        Appellee 
argues that “[t]he potential differences in what is permitted in collecting a 
premium is not important to the substantive legal principle in evaluating the 
contract terms.” According to Appellee, the issue is not whether a state 
permits charging an administrative fee, but whether the parties to the policy 
contracted for its payment. Appellee’s contention fails to recognize that the 
issue of whether Appellee agreed to pay the administrative fee is entirely 
dependent on whether an insurance company can charge a premium that includes an 
amount treated internally as an administrative fee. As previously discussed, the 
trial court must determine whether there is a definite legal meaning or 
interpretation for the word “premium” in order to address whether the 
contract is ambiguous, and ultimately the respective rights of the parties. Coker, 
650 S.W.2d at 393. The various states’ statutory definitions, many of which 
expressly relate to the interpretation of insurance contracts, are relevant to 
the interpretation of the contracts in each class member’s state, especially 
given each state’s strong interest in regulating the insurance industry. See 
e.g. Crain v. Nat’l Am. Ins. Co., 2003 OK CIV APP 77, 52 P.3d 1035, 1042 
(stating “[b]ecause the insurance industry carries such an important public 
mission, Oklahoma recognized the need to regulate the State’s insurance 
companies by constitutional provisions and establishment of the Insurance 
Commission to oversee the execution of the industry’s state-related policy 
goals.”); Mem’l Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 
645, 651-52 (Tex. App.—Houston [14th Dist.] 1992, no writ) (op. on reh’g) 
(stating Texas has strong interest in the regulation of insurance).
Superiority
        Appellant’s 
final argument in support of decertifying the Administrative Fee Class is that a 
class action is not superior to other available methods for the fair and 
efficient adjudication of the claims. See Tex. R. Civ. P. 42(b)(4). A class action 
is superior to other methods of adjudication where any difficulties that might 
arise in the management of the class are outweighed by the benefits of classwide 
resolution of common issues. See Weatherly v. Deloitte & Touche, 905 
S.W.2d 642, 654 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.). In 
assessing the superiority of a class action, the court should consider:
  
(A) 
the interest of members of the class in individually controlling the prosecution 
or defense of separate actions; (B) the extent and nature of any litigation 
concerning the controversy already commenced by or against members of the class; 
(C) the desirability or undesirability of concentrating the litigation of the 
claims in the particular forum; [and] (D) the difficulties likely to be 
encountered in the management of a class action.

 
Tex. R. Civ. P. 42(b)(4). “Superior” 
means more than equivalent; the class action must be more fair and efficient 
than other methods. Schein, 102 S.W.3d at 700. According to Appellant, a 
more superior forum exists to resolve the class members’ claims—the 
individual insurance departments in the states where each class member resides. 
Appellant argues that when alternate methods, like administrative proceedings, 
are a more efficient and effective means of settling the controversy, class 
certification should be denied. As an example, Appellant points out that in 
Texas, the Texas Commissioner of Insurance and the TDI are empowered to examine 
policy language, conduct investigations, adjudicate complaints, and award 
appropriate relief. See Tex. Ins. 
Code Ann. § 31.002(1) (Vernon Supp. 2004). Thus, if Appellee had brought 
his administrative fee claim to the attention of the TDI and it determined that 
Appellee’s claim had merit, the TDI could take action against not only 
Appellant, but all insurance companies that sell insurance in Texas, to modify 
their policies or pay penalties. For these reasons, Appellant asserts that the 
TDI is uniquely able to address Appellee’s claims and award Texas health 
insurance policyholders any economic recovery for which they might be entitled.
        The 
sole factor that the trial court discussed in its superiority analysis was the 
small economic value of the class members’ individual claims. The trial court 
noted that because of the small claim value for the individual class members, 
the alternative to a class action is no action at all. Certification, however, 
is not merely a vehicle to make sure no claim goes untried. Tracker Marine, 
108 S.W.3d at 361. If that were the sole test, our limited resources might be 
diverted to trying claims that are frivolous or trifling. Id. In Bernal, 
the Texas Supreme Court addressed the plaintiffs’ argument that the most 
compelling reason to certify a class action arises when the cost of litigating 
individual claims exceeds the potential individual recovery. 22 S.W.3d at 439. 
The court rejected the argument stating:
  
We 
do not second-guess plaintiffs’ contention that, from a financial perspective, 
some claims may not be worth pursuing if class-action treatment is denied. But 
proceeding as a class action may very well cost more in the long run, if, as can 
be expected here, the class must ultimately be dissolved because there is no 
manageable way, fair to both parties, to resolve the individual issues.

  
Id. 
Recognizing the similarity between the plaintiff’s argument in Bernal 
and the trial court’s justification for finding superiority in this case, we 
apply the same line of reasoning. Consequently, we conclude that Appellee 
presented insufficient evidence to establish that a class action is the superior 
method of adjudicating this issue.
Administrative Fee Class Holding
        An 
assessment of the contract’s ambiguity is critical in determining the 
appropriateness of certifying the Administrative Fee Class, and the record is 
not sufficient to make that threshold determination. See Fein v. R.P.H., Inc., 
68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (holding 
that the trial court errs if it does not construe an unambiguous contract as a 
matter of law and, instead, submits the issue to the jury). Although we cannot 
determine based on the undeveloped record before us whether the contract is 
ambiguous,[7]  we can certainly say that an 
adequate understanding of the “claims, defenses, relevant facts, and 
applicable substantive law” requires an analysis of the ambiguity issue. See 
Bernal, 22 S.W.3d at 435. At the very least, an informed analysis would 
begin with knowledge regarding the 55P and 70P application and policy forms for 
each and every state included in the Administrative Fee Class. As it stands, the 
record includes policy applications for only ten of the eighteen states, and of 
those included, there is a substantial semantic difference between the forms. 
Having determined that Appellee failed to establish the class certification 
requirements of typicality, predominance, and superiority, we hold that Appellee 
failed to demonstrate that the Administrative Fee Class should be certified and 
sustain Appellant’s first issue.
B. 
Cancellation Class
        In 
its second issue, Appellant contends that the trial court failed to adequately 
establish the class certification requirements for the Cancellation Class, 
including commonality, typicality, and adequacy of representation under Rule 
42(a) and predominance under Rule 42(b)(4). Appellant vehemently argues that 
Appellee is a completely inadequate representative for the Cancellation Class 
because Appellee seeks only to recover fees for his attorney. Appellant contends 
that Appellee abandoned all substantive relief for the Cancellation Class and 
attempts to bind them all to a take-nothing judgment on this claim thereby 
demonstrating antagonistic interests that preclude him from adequately 
representing the Cancellation Class.
        The 
trial court found that Appellee demonstrated that he will fairly and adequately 
protect the interests of the class because he already obtained the agreed 
temporary injunction that protected every class member from having their 
insurance policies cancelled. The agreed temporary injunction, however, would 
have affected each insured differently. It is undisputed that, after Appellant 
sent its December 31, 2001 non renewal letter, some class members, like 
Appellee, maintained their coverage while others did not. According to Tony 
Huang, Appellant’s second vice president, there were 604 people with 55P 
policies in Texas on December 31, 2001. By the end of February, there were 544 
people with 55P policies in Texas, and at the end of June there were only 178 
people with 55P policies in Texas. Any class members who located a new insurance 
provider or allowed their coverage to lapse in reliance on the December 31, 2001 
letter may have suffered a loss much greater than that of Appellee, for which 
the remedy of a temporary injunction simply would not suffice. Some of the 
policyholders may have taken a plan with far less coverage, some may have taken 
a plan with a much higher cost, and some may have foregone insurance coverage 
all together.
        As 
for the policyholders that retained their coverage with Appellant, a temporary 
injunction might not adequately represent their needs. For example, the record 
reflects that a Texas 55P policyholder, Linda Bernard, wrote a letter to the TDI 
on January 30, 2002 expressing concerns over the cancellation of her 55P policy. 
According to Mrs. Bernard, her husband suffered from prostate cancer that 
required him to take a shot costing $680 every three months and another 
medication costing around $330 per month. Mrs. Bernard claimed in her letter 
that no other insurance company would provide coverage for her husband with his 
condition. James Boaz wrote a complaint letter to the TDI on April 3, 2002 also 
expressing concerns over the cancellation of his 55P policy. Mr. Boaz had been 
treated for lung cancer that same year and expressed grave doubt that he would 
be able to obtain similar coverage in light of his illness. In addition to the 
possibility that these policyholders would not be satisfied with a temporary 
injunction as their sole remedy, they might very well wish to seek claims for 
various other causes of action. Appellee, for instance, originally sought class 
damages for insurance code article 21.21 violations, conversion, and breach of 
the duty of good faith and fair dealing in addition to his breach of contract 
claim. See Tex. Ins. Code Ann. 
art. 21.21.
        We 
recognize that some of our sister courts have stated that such speculative 
claims concerning potential conflicts are insufficient to show that the trial 
court abused its discretion in finding adequacy of representation. Phillips 
Petroleum Co. v. Bowden, 108 S.W.3d 385, 399 (Tex. App.—Houston [14th 
Dist.] 2003, no pet.); Peters v. Blockbuster, Inc., 65 S.W.3d 295, 305 
(Tex. App.—Beaumont 2001, no pet.); Employers Cas. Co. v. Tex. Ass’n of 
Sch. Bds., 886 S.W.2d 470, 475 (Tex. App.—Austin 1994, writ dism’d w.o.j.); 
Dresser Indus., Inc. v. Snell, 847 S.W.2d 367, 373-74 (Tex. App.—El 
Paso 1993, no writ). In Employers Casualty Co. v. Texas Association of School 
Boards, the Austin Court of Appeals ruled that the speculative claims of the 
defendants regarding potential conflicts between the class members were 
insufficient to establish that the trial court abused its discretion in 
certifying the class. 886 S.W.2d at 475-76. The court reasoned that even if the 
trial court later discovered the speculative claims were true, it could redefine 
the class, create subclasses, or even withdraw certification at any time before 
final judgment. Id. at 476. But it is precisely this type of “certify 
now and worry later” approach that the Texas Supreme Court expressly rejected 
in Bernal. 22 S.W.3d at 435.
        It 
is true that trial courts have broad discretion afforded to them in certifying a 
class. Bally Total Fitness Corp. v. Jackson, 53 S.W.3d 352, 357 (Tex. 
2001). The Texas Supreme Court has recently curbed the breadth of that 
discretion, however, by instructing trial courts to scrutinize rigorously 
whether all Rule 42 prerequisites to certification have been met. See Schein, 
102 S.W.3d at 690; Bernal, 22 S.W.3d at 439; Neinast, 67 S.W.3d at 
280. The Bernal court, in initiating a more stringent standard for class 
certification, relied extensively on interpretations under the federal class 
action rule, on which Rule 42 is patterned. Fed. R. Civ. P. 23; Bernal, 22 
S.W.3d at 433, 435-36. Under the federal class action rule, the adequacy of 
representation requirement is not met if the court discerns potential conflicts 
between the interests of the plaintiffs and the interests of the absent class 
members. In re Universal Access, Inc., 209 F.R.D. 379, 386 (E.D. Tex. 
2002); Walton v. Franklin Collection Agency, Inc., 190 F.R.D. 404, 410 
(N.D. Miss. 2000); Kalodner v. Michaels Stores, Inc., 172 F.R.D. 200, 209 
(N.D. Tex. 1997). Although the flexibility of Rule 42 “enhances the usefulness 
of the class-action device,” actual, rather than presumed, conformity to the 
requirements of the rule is indispensable. Bernal, 22 S.W.3d at 435 
(quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160, 102 S. Ct. 2364, 
2372 (1982)). Because of the Texas Supreme Court’s recent narrowing of the 
trial court’s broad discretion, we subject the trial court’s certification 
order to the same narrowed standard and conclude that Appellee has not 
demonstrated that he will fairly and adequately protect the interests of the 
class.
        Further, 
Appellee has not demonstrated that he suffered any financial harm and admits 
that he did not take steps to find replacement coverage as a result of 
Appellant’s December 31, 2001 non renewal letter. Accordingly, Appellee failed 
to establish that he has the same interests or the same injury as other 
potential class members who did obtain new coverage as a result of the non 
renewal letter or who are unable to obtain comparable replacement coverage. 
Moreover, any claim by policyholders who did alter their position as a result of 
the non renewal letter will present a different set of issues to a jury than 
would Appellee’s claim. For these reasons, we conclude that Appellee did not 
establish the typicality, commonality, and predominance requirements of Rule 42.
        In 
addition to seeking certification under the predominance requirement of Rule 
42(b)(4), Appellee alternatively sought certification of the Cancellation Class 
under Rule 42(b)(2) which requires proof that Appellant has acted on grounds 
generally applicable to the class in a manner that makes final injunctive or 
declaratory relief appropriate with respect to the class as a whole. Tex. R. Civ. P. 42(b)(2). The trial 
court found that in obtaining injunctive relief for the class, Appellee 
satisfied Rule 42(b)(2). For reasons already discussed, we conclude that 
injunctive relief was not appropriate with respect to the Cancellation Class as 
a whole. Having determined that Appellee failed to establish the class 
certification requirements set forth in Rule 42(b)(2) as well as the typicality, 
commonality, adequacy, and predominance requirements of Rule 42, we hold that 
Appellee failed to demonstrate that the Cancellation Class should be certified.
C. 
Due Process
        Appellant’s 
third and final issue takes the position that the trial court violated Rule 42 
and due process under the federal and state constitutions in permitting Appellee 
to change his class definitions and damage theories on the morning of the 
class-certification hearing. Due process requires that defendants to a class 
action receive notice before a class-certification hearing and have an 
opportunity to be heard on the question of certification. Monsanto Co. v. 
Davis, 25 S.W.3d 773, 785 (Tex. App.—Waco 2000, pet. dism’d w.o.j.); In 
re M.M.O., 981 S.W.2d 72, 80 (Tex. App.—San Antonio 1998, no pet.). 
Because we hold the certification order before us improper with respect to both 
the Administrative Fee Class and Cancellation Class, we do not address 
Appellant’s third issue. On remand, Appellant will have had ample notice of 
the changes made by Appellee on the morning of the certification hearing.
IV. 
Conclusion
        The 
Texas Supreme Court has held that appellate courts have broad discretion to 
remand in the interest of justice. Scott v. Liebman, 404 S.W.2d 288, 294 
(Tex. 1966). As long as there is a probability that a case for any reason has 
not been fully developed, an appellate court has the discretion to remand rather 
than render a decision. Kondos v. Lincoln Prop. Co., 110 S.W.3d 716, 724 
(Tex. App.—Dallas 2003, no pet.); Bayway Serv., Inc. v. Ameri-Build Constr., 
L.C., 106 S.W.3d 156, 161 (Tex. App.—Houston [1st. Dis.] 2003, no pet.). 
For the case at hand, we will not interfere with the trial court’s discretion 
to determine whether to grant or deny class certification and its responsibility 
to manage the class action as the case develops. See Schein, 102 S.W.3d 
at 700 (stating, “We cannot say, of course, that no class can be certified in 
this case; that matter must be decided by the trial court in the first 
instance.”); Intratex, 22 S.W.3d at 406 (stating, “Remanding for the 
trial court to consider redefinition is consistent with the trial court’s 
discretion with regard to class certification and its responsibility to manage a 
class action.”); see also Tex. 
R. Civ. P. 42(c)(1) (granting trial court authority to determine whether 
a class should be certified). We reverse the trial court’s judgment certifying 
the Administrative Fee Class and Cancellation Class and remand this case to the 
trial court for further proceedings consistent with this opinion.

  
                                                                  DIXON 
W. HOLMAN
                                                                  JUSTICE
  
PANEL 
B:   DAUPHINOT, HOLMAN, and McCOY, JJ.
 
DELIVERED: 
March 4, 2004
 

 
NOTES
1.  
Appellant’s administrative fee increased from $7.50 to $8.50 in 1999, and then 
to $12.50 in 2000.
2.  
$173.16 equals the “Total Amount Collected” ($223.16) less “Enrollment 
Fees” ($50.00).
3.  
Appellee’s original petition sought claims for 1) breach of contract, 2) 
violations of article 21.21 of the Texas Insurance Code, 3) conversion, and 4) 
breach of the duty of good faith and fair dealing. All claims except the breach 
of contract claim were dropped in Appellee’s eighth amended petition, filed on 
the morning of the class certification hearing.
4.  
The trial court defined the class as “[a]ll persons who purchased insurance 
policy form H-0055P or H-0070P from [Appellant] during the period beginning four 
(4) years prior to the filing of this suit through the date of trial of this 
cause and were charged a monthly administrative fee after the initial monthly 
administrative fee.”
5.  
See la. Code §§ 27-14-1(2), 
27-14-2 (1975); Ariz. Rev. Stat. Ann. § 20-1103 (2003); Ark. Code Ann. 
§ 23-79-101(2) (Michie 2001); Ga. Code 
Ann. § 33-24-1(2) (1995); Ind. 
Code Ann. § 27-1-2-3(w) (West 2003); Nev. Rev. Stat. Ann. 679A.115 (Michie 
2002); Okla. Stat. Ann. tit. 36, 
§ 3603 (West 1999); S.C. Code Ann. 
§ 38-1-20(31) (Law. Co-op. 2003); W. Va. 
Code § 33-1-17 (1966).
6.  
Indiana’s definition is similar. See Ind. Code Ann. § 27-1-2-3(w) (West 
2001) (“[M]oney or any other thing of value paid or given in consideration to 
an insurer . . . shall include . . . policy fees, admission fees, membership 
fees”).
7.  
The record before us does not contain policy applications for all of the states 
and the states that are included in the record are not all the same.